HATCHER, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–344–CR. Submitted on briefs May 3, 1978.—Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 320.)

562

For the plaintiff in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender, and *Barbara B. Berman,* assistant state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general.

HANLEY, J. The issue presented on this appeal is whether the trial court erred in refusing to permit the defendant to withdraw his guilty plea on the grounds that the defendant had been denied his constitutional right to a speedy trial.

It is a general principle of criminal law that a guilty plea, voluntarily and understandingly made, constitutes a waiver of various defects and defenses arising from events preceding the plea. Among the defenses which are waived by a guilty plea are those which may be based upon constitutional grounds. *Brady v. United States,* 397 U.S. 742 (1970). This court has applied this rule to hold that a guilty plea, properly made, will waive a defense based upon the right to a speedy trial. *Foster v. State,* 70 Wis.2d 12, 233 N.W.2d 411 (1975).

Since a guilty plea acts to cut off a defendant's right to assert various constitutional privileges and the defenses based thereon, this court, in accordance with the mandate of *Boykin v. Alabama,* 395 U.S. 238 (1969), has held that in accepting a guilty plea a trial court must personally establish a record which demonstrates that the defendant's plea was voluntarily and knowingly made. *Ernst v. State,* 43 Wis.2d 661, 170 N.W.2d 713 (1969). To do this, trial courts were instructed to interrogate the defendant as to the defendant's education and general comprehension, his understanding of the nature of the crime with which he is charged and the range of punishment it carries. The trial court must also ascertain whether any promises or threats have been made to the defendant in connection with his appearance, refusal of counsel, or proposed plea of guilty; that the defendant understands that if he does not have counsel and cannot afford one, counsel will be provided; and that the defendant understands that a lawyer might dis-

cover defenses or mitigating circumstances which might not be apparent to him. The trial court must also satisfy itself that the conduct to which the defendant admits constitutes the offense charged or an included one to which he pleads guilty. *Ernst v. State, supra* at 674.

Once a defendant has pleaded guilty, and thus waived these various defenses and constitutional challenges, he will be permitted to withdraw that plea only under certain circumstances. In *State v. Reppin,* 35 Wis.2d 377, 151 N.W.2d 9 (1967), this court adopted the "manifest injustice" test under which a defendant will be entitled to withdraw a previous guilty plea only when he is able to show that his plea was made under any of the following or similar situations:

" '(1) he was denied the effective assistance of counsel guaranteed to him by constitution, state, or rule;
" '(2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;
" '(3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed; or
" '(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.' " *State v. Reppin, supra* at 385, n. 2; *See also Ernst v. State, supra* at 666.

This list is not exhaustive, but the defendant has the burden of proving grounds for withdrawal of his guilty plea by clear and convincing evidence. *State v. Carlson,* 48 Wis.2d 222, 230, 179 N.W.2d 851 (1970); *Reiff v. State,* 41 Wis.2d 369, 164 N.W.2d 249 (1969). Ordinarily, the question of withdrawal of a guilty plea under the manifest injustice test is addressed to the discretion of the trial court, and ordinarily the court's decision will not be disturbed on appeal unless an abuse of discretion

is shown. *Creighbaum v. State*, 35 Wis.2d 17, 29, 150 N.W.2d 494 (1967).

There is an exception to this rule, however, so far as a motion to withdraw a guilty plea poses a question addressed to the discretion of the trial court. Under this exception, where a defendant establishes a denial of a relevant constitutional right, he may withdraw his guilty plea as a matter of right. *Creighbaum v. State, supra* at 29; *See also, Ernst v. State, supra* at 667. To withdraw a plea as a matter of right on constitutional grounds, a defendant must show (a) that a violation of a constitutional right has occurred; (b) that this violation caused him to plead guilty; and (c) that at the time of his plea he was unaware of the potential constitutional challenges to the case against him because of the violation. *Edwards v. State*, 51 Wis.2d 231, 234, 186 N.W.2d 193 (1971).

Regardless of which approach is utilized, the fact that a defendant has waived a defense, constitutional or otherwise, by entering a plea of guilty is not dispositive of his right to seek the withdrawal of the plea; "The question on a motion to withdraw a plea is not whether the accused has waived his rights but whether he should be relieved from such a waiver." *Brisk v. State*, 44 Wis. 2d 584, 588, 172 N.W.2d 199 (1969).

Here, the defendant structures his arguments in a manner which was suggested by this court in *Foster v. State, supra*. In *Foster*, the defendant sought to collaterally attack his conviction on the grounds that he had been denied a speedy trial. The defendant had been convicted after entering a guilty plea. Though the defendant, together with counsel, had raised the issue before pleading guilty, he neither appealed the judgment of conviction nor moved the trial court to withdraw the plea.

On appeal, this court found no merit in the defendant's speedy trial claim, but nevertheless, in closing dicta, indicated that such an assertion would more properly "provide a basis for a claim that the plea of guilty was not knowledgeably entered, since it was based on a misunderstanding as to the effect of a plea of guilty on the right to pursue, on appeal, a challenge on the speedy trial ground." *Foster v. State, supra* at 21.

The defendant argues that the record does not support a finding that his plea of guilty was knowingly and voluntarily waived because it does not indicate that he was informed, either by his attorney or by the trial court, that the right to pursue his challenge to the proceeding on speedy trial grounds would be waived by entering such a plea.

Because the defendant asserts the violation of a constitutional right as the basis of his request to withdraw the guilty plea, the issue here must be resolved under the withdrawal as a matter of right test set forth in *Edwards v. State, supra.* Consequently, it must first be determined whether the defendant suffered a violation of a constitutional right.

The test for determining whether there has been a deprivation of the right to speedy trial was set forth by the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530 (1972) and followed by this court in *Day v. State,* 61 Wis.2d 236, 242–47, 212 N.W.2d 489 (1973). Under the test enunciated in these cases, four factors are considered: (1) the length of the delay; (2) the reason for the delay; (3) the assertion, if any, by the defendant for a speedy trial; and (4) the prejudice to the defendant. *See also, Hipp v. State,* 75 Wis.2d 621, 625, 250 N.W.2d 299 (1977). The first factor presents a threshold question—is the length of delay presumptively prejudicial—which must be answered in the

affirmative before inquiry can be made into the remaining three factors.

A chronology of the events of this case runs from April 4, 1974 until December 16, 1975. The state contends that this chronology may be divided into three distinct periods. The first period—the five months between the filing of the complaint on April 4, 1974 and the return of the case to Judge JOHN F. FOLEY on September 4, 1974—was necessary for the orderly preparation of the case for trial and thus not delay which could be charged against either the state or defendant. *Scarbrough v. State,* 76 Wis.2d 87, 101, 250 N.W.2d 354 (1977); *Norwood v. State,* 74 Wis.2d 343, 354–55, 246 N.W.2d 801 (1976). The second period—the twelve months between September 4, 1974 and the defendant's trial on September 15–17, 1975—is conceded to be delay which must be charged against the state. The third period— the three months between September 17 and the defendant's guilty plea on December 16, 1975—was attributable to the defendant's motions to dismiss and, the state argues, not delay chargeable against it.

The state concedes that the twelve month delay was presumptively prejudicial under this court's holding in *Green v. State,* 75 Wis.2d 631, 636–37, 250 N.W.2d 305 (1977). However, the state contends that the delay was caused by court congestion and not by intent or design. The record supports the state's assessment of this delay. During this period, the defendant's trial was scheduled eight times: September 4, December 17, 1974, April 14, April 21, May 6, July 11, September 12, and September 15, 1975. With the exception of the first date, the defendant did not appear in court; presumably, he was incarcerated in Waupun on the other conviction. The record indicates that five of the adjournments were occasioned by a "congested calendar" or a "jury in progress." Although no explanation is given for two other

adjournments, the record contains nothing to indicate that the reason was other than the overburdened court system.

In *Green v. State, supra* at 637, this court stated that although a twelve month delay caused by a congested and overburdened court is to be charged against the state, the delay "is not to be weighed heavily against it . . . because the delay was not intentional nor motivated as a device to disadvantage the defendant in the preparation of his defense." This comports with the rule in *Barker v. Wingo, supra* at 531, where the Supreme Court, in explaining the weight to be given a presumptively prejudicial delay, stated:

"A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."

Once a presumptively prejudicial delay had been found to exist, the court must then evaluate the diligence of the defendant in asserting his right to a speedy trial. Though a defendant's failure to demand a speedy trial will not constitute a waiver of the right, *Barker v. Wingo, supra* at 528, the defendant's complete failure or delay in demanding a speedy trial will be weighed against him. *Hipp v. State, supra* at 628; *Day v. State, supra* at 247. Here the defendant did demand a speedy trial on July 7, 1975. On August 25, the defendant, through counsel, brought a motion to dismiss on the grounds, inter alia, that he had been denied a speedy trial. The motion was denied on the morning of September 15, 1975. That afternoon, the trial commenced. On September 17, when the court declared a mistrial, the defendant

renewed his motion to dismiss. Again it was denied. On October 1, the trial court ordered the case sent to the court administrator for reassignment due to a congested calendar; a jury trial was then in progress. The case was assigned to Judge MICHAEL J. BARRON, and the motion was again raised on October 29. The court scheduled a motion date, December 7, 1975, on which arguments on the speedy trial issue would be heard. In the interim, the parties were to submit written briefs. On the date scheduled for these arguments, the defendant's counsel requested an adjournment, which was granted until December 16, 1975. On that day, before the motion was argued, the defendant pleaded guilty.

The final factor the court must assess in determining whether the defendant was denied his constitutional right to a speedy trial is the prejudice suffered by him. The right to a speedy trial is designed "(i) to prevent oppressive pretrial incarceration; (ii) to minimize the anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo, supra* at 532.

The defendant addresses the first and third of these interests sought to be protected by speedy trial. As to the first, the defendant correctly notes that the fact that an accused is incarcerated on another conviction does not of itself render the question of prejudice to the defendant moot. In *Smith v. Hooey,* 393 U.S. 374, 378 (1969), the Supreme Court stated: "[T]he fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charged." The defendant contends that the delay was oppressive, and thus prejudicial, because it eliminated the possibility of receiving a sentence on the pend-

ing charge concurrent with that which he was then serving. However, the weight of this argument is slight when it is noted that the trial court did impose a sentence to run concurrently with the one he was serving.

The defendant also contends that his defense was prejudiced by the delay. An alibi was presented and a defense witness testified at the trial which resulted in a hung jury. The defendant hypothesizes that some "better remembered fact" on the part of the alibi witness might have resulted in an acquittal had the trial been timely. Admittedly, it is difficult to demonstrate that a witness' difficulty in recollecting facts is the result of pre-trial delay as opposed to simple ignorance of the truth: "Loss of memory . . . is not always reflected in the record because what has been forgotten can rarely be shown." *Barker v. Wingo, supra* at 532. However, the defendant's contention is little more than speculation and thus can only be given slight weight.

The inquiry into whether or not a defendant has been denied a speedy trial requires the court to balance "the conduct of both the prosecution and defendant . . ." *Barker v. Wingo, supra* at 530. None of the factors discussed above have talismanic qualities: "[N]one of the four factors [are] . . . either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker v. Wingo, supra* at 533.

In this case the balancing of the factors does not favor a conclusion that the defendant was deprived of a speedy trial. The period of delay was long, but not extraordinarily so. Even so, it should not weigh heavily against the state because it resulted from neutral, as opposed to antagonistic, circumstances. Although the defendant did

demand a speedy trial, he did so only after fifteen months had elapsed from the time he was charged. Moreover, prejudice to the defendant, if any, was minimal. Though a better remembered fact may have resulted in his acquittal at the first trial, this assertion could be made in any criminal case. The other asserted form of prejudice—the diminishing possibility of receiving a concurrent sentence—was negated by the nature of the sentence imposed. Thus, on the basis of this record, the court concludes that no constitutional violation of the defendant's right to a speedy trial occurred.

Because we conclude that the defendant did not suffer a violation of his constitutional right to a speedy trial, it is not necessary to examine the other two elements which must be satisfied in order to withdraw a plea of guilty as a matter of right.

*By the Court.*—Judgment and order affirmed.